**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HAFTERLAW, LLC, | ) |
|         Plaintiff, | ) |
| vs. | ) Case No.: 2:13-cv-01943-GMN-NJK |
| | ) |
| NEELU PAL, | ) **ORDER** |
| | ) |
|         Defendant. | ) |

Pending before the Court is the Motion to Transfer Venue, (ECF No. 17), filed by *Pro Se* Defendant Neelu Pal ("Dr. Pal"). Plaintiff HafterLaw, LLC filed a Response, (ECF No. 21), and Dr. Pal filed a Reply, (ECF No. 22).

**I.    BACKGROUND**

This action arises out of a dispute regarding attorney Jacob Hafter's representation of Dr. Pal in two cases that were litigated in New Jersey state and federal courts. (Compl. 4:2-6, ECF No. 4). Dr. Pal first entered into a representation agreement with the Law Office of Jacob Hafter and Associates ("H&A") on June 14, 2012. (Ex. A to Compl., at 9, ECF No. 5). Dr. Pal and H&A executed an amended agreement on November 2, 2012, (the "November Agreement"). (Am. Agreement, ECF No. 17-2). The November Agreement provided, *inter alia*, that H&A would represent Dr. Pal in two cases that were pending in New Jersey federal and state courts, would receive a fee of 40% of all gross amounts recovered through the litigation, and, if terminated, would be entitled to a receive payment at an hourly rate for the time spent on the litigation. (*Id.* at 2-4). Of particular relevance to the instant motion, the November Agreement contained a forum-selection clause stating:

> [E]ach of the Parties irrevocably submit [sic] to the exclusive jurisdiction of the United States District Court for the District of Nevada or any court of the State of Nevada located in Clark County in any action suit or proceeding arising out of or relating to this Agreement or any of the transactions contemplated hereby, and agrees that any such action, suit, or proceeding shall be brought only in such court; provided, however, that such consent to jurisdiction is solely for the purpose referred to in this Section 11 [sic] and shall not be deemed to be a general submission to the jurisdiction of said courts or in the State of Nevada other than for such purpose. Each of the Parties hereby irrevocably waives, to the fullest extent permitted by Law, any objection that it may now or hereafter have to the laying of the venue of any such action, suit or proceeding brought in such a court. Each of the Parties further irrevocably waives and agrees not to plead or claim that any such action, suit, or proceeding brought in such a court has been brought in an inconvenient forum.

(*Id.* at 5).

In February 2013, after discovering that H&A was involved in bankruptcy proceedings, Dr. Pal suggested that the November Agreement be further amended, and sent a proposed draft for Mr. Hafter's approval. (Proposed Am. Agreement at 11-14, ECF No. 17-3). Emails attached to Dr. Pal's Motion indicate that Mr. Hafter subsequently responded that he could not amend the November Agreement without the permission of the bankruptcy trustee. (*Id.*). This exchange ended with Dr. Pal unconditionally stating, "Absent this revised agreement, you are not representing me." (*Id.*). Though Dr. Pal has provided a copy of the proposed amended agreement bearing her signature, there is no indication that Mr. Hafter or any other agent of H&A signed this version.

On April 16, 2013, a jury verdict was entered in Dr. Pal's favor in the New Jersey state case. (Def.'s Motion 5:17-18). For reasons that are not clear from the record, the relationship between Mr. Hafter and Dr. Pal soon deteriorated. In an email sent to Dr. Pal on May 8, 2013, Mr. Hafter stated, "I really don't know what I ever did to hurt you or make you mistrust me. It

is really a shame. I think I am going to be withdrawing from the federal case. I will get you an invoice for that shortly. It is clear that we cannot work together." (Ex. 5 to Def.'s Mot. at 2, ECF No. 17-5).

Dr. Pal claims that following this exchange, Mr. Hafter demanded immediate payment in excess of $100,000 for his work in the New Jersey federal case, but refused to submit an independent audit of the hours billed. (Def.'s Mot. 5:19-20). On May 20, 2013, Dr. Pal sent an email to Mr. Hafter stating, "You are not representing me in any capacity. I WILL NOT communicate any further." (Ex. 6 to Def.'s Mot. at 2, ECF No. 17-6). To which Mr. Hafter replied, "CLEARLY YOU ARE A THIEF AND SOMEONE WHOSE WORD CANNOT BE BELIEVED. An honest person would be willing to live by the agreement which they signed." (*Id.*). Later that evening, Mr. Hafter sent another email stating, "Please be advised that I will be including your husband in the complaint when I sue you, as many of the checks you wrote came from his account, as well." (Ex. 7 to Def.'s Mot. at 2, ECF No. 17-7). Ostensibly, this exchange concluded with an email sent shortly after midnight on May 21, 2013, in which Dr. Pal stated, "Provide all documents, invoices and information that I have repeatedly requested. I will pay you all that is due to you after an audit. Please provide this information that I have requested so many times. I will not communicate with you any more [sic]." (Ex. 6 to Def.'s Mot at 2).

Incidentally, the same day that this exchange took place, Mr. Hafter signed an "Assignment of Case" which purported to transfer the legal representation of Dr. Pal, as well as any rights contained the November Agreement, from H&A to HafterLaw. (Ex. D to Compl., ECF No. 5). This document was not signed by Dr. Pal and there is no indication on the record as to when she received notice of its existence.

HafterLaw filed the instant case on October 1, 2013, in Clark County District Court. (Compl., ECF No. 5). Dr. Pal removed the action on October 23, 2013, citing this Court's

diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Removal Pet., ECF No. 1).

Despite the pendency of the instant action and numerous protests by Dr. Pal, Mr. Hafter continued to receive payments and distribute funds related to the New Jersey state case on Dr. Pal's behalf. (*See* Distribution Letter at 4, ECF 17-13).  On October 17, 2013, Mr. Hafter sent a letter to Dr. Pal explaining that out of $2,118,156.96 awarded to Dr. Pal in the New Jersey state case, he had deducted $847,262.78 for legal fees and $52,900.60 for other fees and costs. (*Id.*).  This letter also disclosed that Mr. Hafter withheld $130,000 based on the legal fees to which he claimed to be entitled for his work on the New Jersey federal case. (*Id.*). On the final page of the distribution letter, Mr. Hafter stated, "[T]o be quite frank, I have made a personal request that you engage in mental health counseling." (*Id.* at 4).

In the instant motion, Dr. Pal requests that HafterLaw's claims be dismissed or, in the alternative, transferred to the District of New Jersey.  HafterLaw contends that venue is proper in the District of Nevada, and any transfer would be unwarranted.  For the reasons stated herein, the Court will grant Dr. Pal's Motion and transfer this action to the District of New Jersey.

## II.     <u>Legal Standard</u>

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for improper venue. Fed. R. Civ. P. 12(b)(3).  Generally, courts look to the venue provisions of 28 U.S.C. § 1391 to determine whether venue is proper. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).  However, even if venue would be proper under 28 U.S.C. § 1391, a defendant may move to dismiss pursuant to Rule 12(b)(3) based on a forum selection clause. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Unlike motions for dismissal under Rule 12(b)(6), when considering a motion to dismiss pursuant to Rule 12(b)(3) the Court need not accept allegations contained in a complaint as true, and may properly consider facts and evidence outside of the pleadings. *Id*.  "Once the

defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper." *E.g.*, *Omnicell, Inc. v. Medacist Solutions Grp., LLC*, 272 F.R.D. 469, 472 (N.D. Cal. 2011) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).

## III.   DISCUSSION

HafterLaw argues that venue is proper in the District of Nevada because: (A) Dr. Pal has waived her ability to challenge venue and (B) the forum-selection clause in the November Agreement is binding upon the parties in this action.  The Court will address each of these arguments in turn.

### A.   *Waiver*

HafterLaw claims that Dr. Pal failed to raise an improper venue objection in her Answer, thereby waiving her ability to raise such an objection later in the case. (Pl.'s Resp. 5:6-10, ECF No. 21).  Indeed, the Federal Rules of Civil Procedure provide that "a defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading . . . ." *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000) (citing Fed. R. Civ. P. 12(h)).  However, HafterLaw's contention completely overlooks the fact that, in her Answer, Dr. Pal directly asserted, "Venue is improper . . . since the substantial portion of events occurred in New Jersey, are governed by New Jersey Law, New Jersey has an interest in regulating the actions of its attorneys, and there is litigation pending in New Jersey that will have an effect upon the counter-claims pled by the defendant." (Answer 4:19-5:2, ECF No. 12).  By including this contention in her Answer, Dr. Pal sufficiently preserved her ability to request dismissal based on improper venue through the instant Motion.

///

## B. *Forum-Selection Clause*

HafterLaw also argues that the forum-selection clause contained in the November 2, 2013, representation agreement is binding upon Dr. Pal and mandates that this action be heard by a court in Nevada. (Resp. 6:2-3). The Supreme Court recently indicated that a forum-selection clause is almost always dispositive of any question regarding proper venue, holding that if parties "have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a [motion to enforce a forum-selection clause] be denied." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). However, the Court acknowledged this presumption is only applicable in cases involving "a contractually valid forum-selection clause." *Id.* at 581 n.5.

In the instant case, the Court finds the forum-selection clause in the November Agreement is not valid as to HafterLaw. A forum-selection clause may be enforced only by and against parties to the underlying contract. *See, e.g.*, *Regents of Univ. of California v. Global Excel Mgmt., Inc.*, 10-cv-8164, 2010 WL 5175034, at *3 (C.D. Cal. Dec. 10, 2010); *Rollins v. Maui Dreams Dive Co.,* 10-cv-0336, 2010 WL 4386755, at *11 (D. Hawai'i Oct. 29, 2010). As H&A and Dr. Pal were the only parties to the November Agreement, (Ex. A to Compl. at 9-13, ECF No. 5), HafterLaw has no basis to assert rights under the forum-selection clause.

HafterLaw argues, however, that it should be treated as a party to the November Agreement because Mr. Hafter transferred all rights related to the November Agreement from H&A to HafterLaw on May 20, 2012. (Response at 7:13-20). In support, Hafterlaw states "both the June, 2012 and November 2012 representation agreements included section which allowed for assignment of the agreement." (*Id.* at 7:22-23). As to this contention, the Court notes that HafterLaw does not cite any precedent to support its dubious premise that a law firm can simply transfer the rights and obligations of a representation agreement to a different firm

without a client's consent.  But even assuming, *arguendo*, that a client could bargain away the ability to require knowledge and consent prior to a change in counsel, HafterLaw's argument still lacks merit.

Paragraph 15 of the November Agreement provides, in relevant part, "The Client agrees, however, that, if the employment of the attorney(s) handling the Claim terminates or is terminated, the Law Firm shall have the right to designate a successor without terminating this Agreement." (Ex. B to Compl. at 19, ECF No. 5).  Contrary to HafterLaw's assertions, this provision says nothing about transferring representation based on *the entire firm's* inability to provide representation; instead, this provision merely granted H&A the authority to assign one of its attorneys to Dr. Pal's case upon the termination of her previous H&A attorney.  Mr. Hafter's attempt to transfer the November Agreement to an entirely new firm with which Dr. Pal had no prior contact is categorically separate from the activity authorized in this provision. Therefore, HafterLaw's argument that the November Agreement authorized H&A to transfer the rights and obligations relating to Dr. Pal's legal representation without her knowledge or consent is belied by the agreement's text.  Thus, HafterLaw has failed to demonstrate that the District of Nevada is an appropriate venue for this action pursuant to the November Agreement's forum-selection clause.

*C. 1391(b) Factors*

Because HafterLaw may not enforce the forum-selection clause, the Court looks to the venue criteria set forth in 28 U.S.C. § 1391(b).  This section provides,

> A civil action may be brought in
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action.

28 U.S.C. § 1391(b).

Upon considering these factors, the Court finds that the District of Nevada is not an appropriate venue for the instant case. Venue is not proper under 1391(b)(1), as it is undisputed that Dr. Pal has been a resident of New York at all times relevant to this suit. (Resp. 5:22-25) (conceding "Dr. Pal is not a resident of the state of Nevada, so . . . venue would not be proper [under 1391(b)(1)]).

Similarly, 1391(b)(2) does not render the District of Nevada to be an appropriate venue. Because HafterLaw's claims are rooted in breach of contract, the "substantial part of the events or omissions giving rise to the claim" are deemed to have occurred "in the place of intended performance." *E.g.*, *Ahead, LLC v. KASC, Inc.*, 2013 WL 1747765, at \*7 (W.D. Wash. Apr. 23, 2013) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986)). This rule exists, in part, because, "[T]he place of performance is likely to have a close nexus to the underlying events." *Decker Coal*, 805 F.2d at 842.

*Decker Coal* is particularly relevant to the instant action. In that case, an Illinois corporation contracted with an Oregon company to supply coal from a mine in Montana. *Id.* at 837. Under the terms of the contract, the coal was transferred to the buyer in Montana, who would transport it for use in its Illinois power plant. *Id.* After a contract dispute arose, the court determined that Illinois was not a proper venue despite the fact that the plaintiff was an Illinois resident and the parties were aware that the coal would ultimately be used in Illinois. *Id* at 842. Instead, the court found that Montana was a proper venue as it was the location where the performance of the contract, the transfer of the coal, actually took place. *Id* at 842.

Similarly, the performance of the contract between Dr. Pal and H&A took place only in New Jersey. The November Agreement provided that H&A would represent Dr. Pal in two cases, both of which were filed in New Jersey. (Ex. B to Compl. at 15, ECF No. 5). It also

specifically contemplated that H&A attorneys would travel to New Jersey in order to represent Dr. Pal. (*Id*. at 16). The agreement contains no terms indicating that its objects would take place in any location other than New Jersey. Therefore New Jersey is the only "place of intended performance" under the agreement between Dr. Pal and H&A.

The fact that H&A was based in Nevada and potentially performed some of its work for Dr. Pal's case while in Nevada is immaterial. Just as the plaintiff's residence and the location of its power plant did not render Illinois to be a proper venue in *Decker Coal*, the state in which H&A resided and chose to prepare for Dr. Pal's cases cannot establish venue in Nevada. Indeed, a ruling to the contrary would provide that a party to a contract could unilaterally establish venue through extra-contractual activities, undermining the fundamental interest in allowing parties to "anticipate where they may be sued." *See Decker Coal*, 805 F.2d at 842. Thus, the Court finds that no substantial part of the events or omissions giving rise to HafterLaw's claims took place in Nevada, and therefore Nevada is not a proper venue pursuant to 28 U.S.C. § 1391(b)(2).[1]

Nevada is also not rendered to be a proper venue pursuant to 1391(b)(3), as this section applies only to cases in which there is no district where venue would be appropriate under subsections (b)(1) or (b)(2). *See, e.g.*, *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1120 (D. Nev. 2013). As discussed previously, it is undisputed that Dr. Pal resides in New York City, rendering the Southern District of New York an appropriate venue pursuant to 1391(b)(1). Concordantly, the fact that a substantial portion of the events giving rise to HafterLaw's claims occurred in New Jersey makes the District of New Jersey an acceptable venue pursuant to 1391(b)(2). Thus, because there are districts that would serve as proper venues under 1391(b)(1) and (2), subsection (3) is not applicable to this case. *See Pfister*, 931

---

[1] In making this finding the Court does not rule upon the question as to whether HafterLaw may assert a claim for breach of contract, given that it was not originally a party to the November Agreement.

F. Supp. 2d at 1120.

Thus, the Court finds that HafterLaw has failed to carry its burden to show that venue is warranted pursuant to 28 U.S.C. § 1391 and will grant Dr. Pal's Motion. However, the Court must still determine whether dismissal or transfer is appropriate. 28 U.S.C. § 1406 ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

A court may consider whether a complaint "smacks of harassment and bad faith" or contains indicia of forum shopping to determine whether a transfer would serve the interests of justice. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992). The undisputed evidence put forth in this matter, as discussed *supra*, contains several indicia of harassment and bad faith, including: (1) Hafterlaw's dubious standing to sue under the November Agreement which was purportedly assigned without Dr. Pal's knowledge or consent; (2) numerous hostile and unprofessional statements Mr. Hafter made to Dr. Pal both before and after he was terminated as her counsel; and (3) the fact that HafterLaw received, withheld, and distributed funds designated for Dr. Pal even while actively litigating against her in this case. Therefore, the Court finds that HafterLaw's claims, by themselves, do not warrant transfer rather than dismissal.

However, as Dr. Pal has active counterclaims in this action, it would defy fairness to dismiss HafterLaw's claims and thereby leave Dr. Pal's counterclaims pending in distant venue not of her choosing. Accordingly, the Court finds that the interest of justice favors transfer of this action to the District of New Jersey.[2]

///

---

[2] HafterLaw and Dr. Pal each requested that this action be transferred to the District of New Jersey if the Court granted Dr. Pal's motion but declined to dismiss the case. (Def.'s Mot. 1:13-15, ECF No. 17); (Pl.'s Resp. 6:19-21, ECF No. 21).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Neelu Pal's Motion, (ECF No. 17), is **GRANTED**. This action is hereby transferred to the District of New Jersey.

**DATED** this __17__ day of September, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court